Argus Security v. Owen















NUMBER 13-02-00219-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG
                                                                                                                       

ARGUS SECURITY SYSTEMS, INC.,                                          Appellant,

v.

PATRICK OWEN D/B/A KORNER MARKET,                               Appellee.
                                                                                                                       

On appeal from the 404th District Court of Cameron County, Texas.
                                                                                                                       

MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Castillo
Memorandum Opinion by Justice Hinojosa

          Appellee, Patrick Owen d/b/a Korner Market (“Owen”), sued appellant, Argus
Security Systems, Inc. (“Argus”), for breach of contract, deceptive trade practices, breach
of warranty, fraud, and negligence. In four issues, Argus contends: (1) Owen’s breach of
contract and negligence claims are barred by limitations; (2) there is no evidence that
Argus breached the contract; (3) there is no evidence that Argus was negligent in installing
the security system; and (4) the trial court erred in allowing Owen’s experts to testify. In
a cross-appeal, Owen contends the trial court erred in granting Argus’s motion for directed
verdict. We affirm the trial court’s order granting a directed verdict for Argus on Owen’s
fraud claim. We reverse the trial court’s judgment and render judgment that Owen take
nothing from Argus.
A. Factual Background
          Owen owns the Korner Market, a convenience store in Brownsville. On November
29, 1994, Owen entered into a contract with Argus for the purchase and installation of a 
closed circuit television security system with VSI technology. VSI technology is an
electronic interface that records data flowing from a video camera to the cash register and
allows cash register transactions to be displayed across the screen of a remote monitor. 
The contract included a lease agreement. Argus agreed to sell the security system to
Oriks, a leasing company, and Owen agreed to lease the system from Oriks.
          The system was installed on December 1, 1994.


 Owen said he began experiencing
problems with the system soon, and often, after installation. However, Owen did not
remember when the calls to Argus were made, and he made no record of the calls. He did
not dispute the dates indicated on the service tickets introduced into evidence by Argus
and admitted that Argus came out to service the system every time he called.
          Owen first complained of the appearance of a black line on the system monitor. 
Argus’s service ticket reflects that this complaint was made on January 26, 1995, and the
system was serviced on January 30 and 31, 1995. Argus determined that the black line
was caused by ground loop interference. On February 6, 1995, Argus installed a ground
isolation transformer which eliminated the black line and reprogrammed the VSI for color. 
The system then tested “ok.”
          On February 8, 1995, Owen called Argus and requested that a camera be relocated. 
The camera was relocated on February 10, 1995, and everything tested “ok.”
          Owen next called Argus on March 8, 1995. Owen complained that the video
playback was being displayed on the monitor in the store, as well as on the monitor in his
office. Because he wanted the playback to be displayed only on the office monitor, the
system was serviced on March 10, 1995, and the problem was eliminated. Everything
tested “ok.”
          On June 8, 1995, Owen complained that the monitor black line had reoccurred. On
June 9, 1995, Argus went to the Korner Market to service the system. Argus found that the
cameras were working, but the multiplexer and the VSI were not working. Both the
multiplexer and the VSI were under manufacturer’s warranty. Argus replaced the
multiplexer and sent the VSI to the manufacturer for repair.
          On August 4, 1995, Argus returned to the Korner Market with the VSI that had been
repaired by the manufacturer. Owen refused to allow Argus to install the repaired VSI and
demanded that it remove the entire system. 
          Because Owen ceased making payments on the security system, he was sued by
Oriks for the balance owed on the lease. After Oriks obtained a judgment against him,
Owen sued Argus. At trial, Argus moved for a directed verdict on the issue of fraud, and
the trial court granted the motion. The issues of breach of contract, breach of warranty,
and negligence were submitted to the jury. The jury found that Argus had breached the
contract, breached its warranty,


 and was negligent. The jury found actual damages in the
amount of $9,773.29 and attorney’s fees in the amount of $19,500. After the trial court
signed the judgment, both parties appealed. 
B. Statute of Limitations
          In its first issue, Argus complains that Owen’s breach of contract and negligence
claims are barred by limitations.
          To rely on the affirmative defense of limitations, a defendant must plead, prove, and
secure findings to sustain the affirmative defense. Woods v. William M. Mercer, Inc., 769
S.W.2d 515, 517 (Tex. 1988). The record shows that at the charge conference, Argus
requested that the trial court submit a question to the jury regarding its affirmative defense
of limitations on Owen’s breach of warranty claim. However, Argus did not request that the
trial court submit similar questions to the jury regarding its affirmative defense of limitations
on Owen’s breach of contract and negligence claims. By failing to request and secure a
jury finding on its affirmative defense of limitations, Argus has not preserved these
complaints for our review. See Rivas v. Cantu, 37 S.W.3d 101, 116-17 (Tex. App.–Corpus
Christi 2000, pet. denied); Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 763
(Tex. App.–El Paso 2000, no pet.). Accordingly, we overrule appellant’s first issue.
C. Expert testimony
          In its fourth issue, Argus complains that the trial court erred in allowing Owen’s
experts to testify that Argus used the wrong type of coaxial cable. Specifically, Argus
contends Owen’s experts were not qualified to testify.
          Admissibility of expert testimony rests largely within the discretion of the trial court.
E.I. du Pont de Nemours and Co., Inc. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995). 
The test for abuse of discretion is whether the trial court acted without reference to any
guiding rules or principles. Id.; Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985). “The test is not whether, ‘in the opinion of the reviewing court, the
facts present an appropriate case for the trial court's action.’” Robinson, 923 S.W.2d at
558 (quoting Downer, 701 S.W.2d at 241-42). Determining that the appellate court would
have ruled differently or that the trial court made an error in judgment does not amount to
an abuse of discretion. Id. However, a clear failure by the trial court to analyze or apply
the law correctly will constitute an abuse of discretion. Walker v. Packer, 827 S.W.2d 833,
840 (Tex. 1992).
          Whether an expert is qualified is a preliminary question to be decided by the trial
court. Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998); Broders
v. Heise, 924 S.W.2d 148, 151 (Tex. 1996). The party offering the expert's testimony
bears the burden to prove that the witness is qualified under rule 702 of the Texas Rules
of Evidence. Gammill, 972 S.W.2d at 718; see Tex. R. Evid. 702. “The offering party must
demonstrate that the witness possesses special knowledge as to the very matter on which
he proposes to give an opinion.” Id.
          Rule 702 requires that expert testimony be limited to testimony from experts who
are qualified by virtue of their scientific, technical, or other specialized knowledge to assist
the trier of fact to understand the evidence or to determine a fact in issue. Tex. R. Evid.
702. A trial court must consider two components in determining whether an expert is
“qualified” under rule 702. Gammill, 972 S.W.2d at 719-20. The first component requires
that the court determine whether the expert is truly qualified to testify because of his
specialized knowledge, skills, background or training. Id. This analysis inquires into the
expert’s specific qualifications to render the precise opinions and testimony he seeks to
offer in the case. Id. This determination also inquires into whether the expert truly has
knowledge superior to that of the common knowledge of the ordinary juror. K-Mart Corp.
v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam). The second component
requires that the court determine whether the expert's testimony is relevant and reliable. 
Gammill, 972 S.W.2d at 719-20; Robinson, 923 S.W.2d at 556-57. 
          It is not enough to show merely that the expert has greater knowledge in the general
topic of the prospective testimony. Gammill, 972 S.W.2d at 719. Rather, the expert must
be shown to have specialized knowledge regarding the precise subject about which he is
offering his opinion. Id. If the expert is not qualified to render the particular opinion
rendered in a particular case, his testimony is not admissible because it does not rise
above mere speculation and, thus, does not offer genuine assistance to the jury. Broders,
924 S.W.2d at 150-54.
          Harold J. Barnard testified on Owen’s behalf. Barnard is a master electrician,
licensed for thirteen years. He is not licensed to install security systems and is not familiar
with the process used to install security systems. He has worked with coaxial cables and
satellite antennas in the installation of radio, television, and telephone services. Barnard
testified that he: (1) never inspected any of Owen’s equipment; (2) never conducted any
tests on Owen’s equipment; (3) is not familiar with any of the manufacturer specifications
for the security camera, multiplexer, or VSI; (4) does not know the specifications of Owen’s
equipment; (5) does not know the type of coaxial cable required for Owen’s equipment; (6)
does not know what Owen’s equipment required; (7) cannot program a security system;
and (8) cannot wire a security system without using a schematic. Barnard admitted that
(1) because he did not test the equipment, he had no basis for his opinion; and (2) he
could not say that any problems Owen had with the equipment were caused by Argus.
          Juan Delgadillo also testified for Owen. Delgadillo is a master electrician, licensed
for eight years. Delgadillo opined that Argus incorrectly used RG59U cable, instead of
RG6 cable. It is Delgadillo’s opinion that RG6 cable should be used for distances over one
hundred feet. On cross-examination, Delgadillo admitted that he did not test Owen’s cable
and had nothing to support his opinions. Delgadillo also admitted that he: (1) has never
installed a security system with a multiplexer or VSI equipment; (2) is not familiar with the
specifications for Owen’s equipment; and (3) does not know the amount of signal needed
for the type of cable used in Owen’s equipment.
          In view of the foregoing, we conclude that Barnard and Delgadillo were not qualified
to testify as experts that Argus used the wrong coaxial cable in installing Owen’s security
system. Although both witnesses were licensed master electricians, neither witness tested
Owen’s equipment and neither witness had any knowledge or experience with the
particular type of security system equipment that Argus installed in the Korner Market. 
          Because neither witness had specialized knowledge regarding the subject of their
testimony, we conclude that their testimony did not rise above mere speculation. 
Accordingly, we hold the trial court abused its discretion in allowing Barnard and Delgadillo
to testify that Argus used the wrong type of coaxial cable. We sustain appellant’s fourth
issue.
D. Sufficiency of the evidence
          When we review a “no evidence” or legal sufficiency of the evidence issue, we must
view the evidence in a light that tends to support the finding of the disputed fact and
disregard all evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749,
754 (Tex. 2001). A no evidence issue will be sustained when the record discloses that: 
(1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the
evidence conclusively establishes the opposite of the vital fact. Merrell Dow Pharms. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997). If there is more than a scintilla of evidence to
support the finding, the no evidence challenge fails. Stafford v. Stafford, 726 S.W.2d 14,
16 (Tex. 1987). When the evidence offered to prove a vital fact is so weak as to do no
more than create a mere surmise or suspicion of its existence, the evidence is not more
than a scintilla and, in legal effect, is no evidence. Kindred v. Con-Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983). More than a scintilla of evidence exists where the evidence supporting
the finding, as a whole, rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions. Havner, 953 S.W.2d at 711.
1. Breach of Contract
          In its second issue, Argus contends the evidence is legally insufficient to establish
that it breached its contract with Owen.


 The elements of a breach of contract claim are:
(1) the existence of a valid contract; (2) performance or tendered performance by the
plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff
resulting from that breach. See Adams v. H & H Meat Prods., Inc., 41 S.W.3d 762, 771
(Tex. App.–Corpus Christi 2001, no pet.). The requisites for a valid contract are: (1) an
offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the
minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract
with the intent that it be mutual and binding. Copeland v. Alsobrook, 3 S.W.3d 598, 604
(Tex. App.–San Antonio 1999, pet. denied). The determination of whether there was a
meeting of the minds of the parties is based on the objective standard of what the parties
actually said and did, rather than on their subjective state of mind. Id.
          The record shows that on November 29, 1994, Owen and Argus entered into a
written contract. By the terms of the contract, Argus was to provide and install a security
system with a VSI and a multiplexer.
          Owen testified that he began experiencing problems with the equipment soon after
it was installed. The monitor displayed a black line, the multiplexer failed to operate and
the VSI failed to work properly. This evidence, however, goes to Owen’s warranty action,
which the jury found was barred by limitations. 
          Because it is undisputed that Argus furnished the equipment required by the
contract, and Owen admitted that Argus always sent someone out to work on the system
in response to his complaints and never stopped trying to correct the problems, we
conclude that Argus complied with the terms of the contract. Accordingly, we hold the
evidence is legally insufficient to support the jury’s finding that Argus breached the
contract. We sustain appellant’s second issue.
2. Negligence
          In its third issue, Argus contends the evidence is legally insufficient to establish that
it negligently installed the security system. The elements of negligence are: (1) a duty; (2)
a breach of that duty; and (3) damages proximately caused by the breach of the duty. Doe
v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). The components
of proximate cause are cause-in-fact and foreseeability. Id. These elements cannot be
established by mere conjecture, guess, or speculation. Id.
          Owen alleged that Argus negligently installed the security system because the
security system did not function properly. When asked what his complaint against Argus
was, Owen stated:
I purchased the system that’s laid out to be, you know, the newest and the
best in the business. It was installed, it never operated properly . . . . That’s
my complaint.
 
          Owen offered the expert testimony of Barnard and Delgadillo to establish that the
security system did not function properly because Argus used the wrong type of coaxial
cable. However, because we have held that Barnard and Delgadillo were not qualified to
testify as expert witnesses, we cannot consider their testimony in our review. The only
other evidence that Owen presented was the testimony of Rogelio “Roy” Cerda, a former
Argus employee. Regarding this issue, Cerda testified only that Argus installers did not
have a special license or certification to install security systems. This evidence is no more
than a scintilla that Argus breached its duty to properly install the security system. 
          We hold the evidence is legally insufficient to support the jury’s finding that Argus
negligently installed the security system. We sustain appellant’s third issue.
E. Appellee’s Cross-Appeal
          In a cross-appeal, Owen contends the trial court erred in granting Argus’s motion
for directed verdict on his fraud claim. 
1. Directed Verdict
          A court may direct a verdict when a plaintiff fails to present evidence raising a fact
issue essential to the plaintiff's right of recovery. See Alejandro v. Robstown Indep. Sch.
Dist., 131 S.W.3d 663, 666-67 (Tex. App.–Corpus Christi 2004, no pet.); see also
Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). A trial
court may also direct a verdict for a defendant if the plaintiff admits or the evidence
conclusively establishes a defense to the plaintiff's cause of action. Reyna v. First Nat'l
Bank, 55 S.W.3d 58, 69 (Tex. App.–Corpus Christi 2001, no pet.).
          On review, we examine the evidence in the light most favorable to the party against
whom the verdict was rendered and disregard all contrary evidence and inferences. Qantel
Bus. Sys. v. Custom Controls, 761 S.W.2d 302, 303-04 (Tex. 1988). When reasonable
minds may differ as to the truth of controlling facts, the issue must go to the jury. Collora
v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978); Villegas v. Griffin Indus., 975 S.W.2d 745, 749
(Tex. App.–Corpus Christi 1998, pet. denied). When no evidence of probative force on an
ultimate fact element exists, or when the probative force of testimony is so weak that only
a mere surmise or suspicion is raised as to the existence of essential facts, the trial court
has a duty to instruct the verdict. Villarreal v. Art Inst. of Houston, Inc., 20 S.W.3d 792, 796
(Tex. App.–Corpus Christi 2000, no pet.). The reviewing court may affirm a directed verdict
even if the trial court's rationale for granting the directed verdict is erroneous, provided it
can be supported on any other basis. Id.
2. Owen’s Claim for Fraud
           The elements of fraud are: (1) that a material representation was made; (2) the
representation was false; (3) when the representation was made, the speaker knew it was
false or made it recklessly without any knowledge of the truth and as a positive assertion;
(4) the speaker made the representation with the intent that the other party should act upon
it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered
injury. See In re Firstmerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). 
          Owen alleged that Argus had made a material misrepresentation to him because
Argus failed to provide him with a functioning security system with VSI technology. Owen
testified that he purchased the security system with VSI technology to meet his specific
needs. He said he needed VSI technology because it allowed him to match the items
purchased at the cash register, which were viewed on the video, with those items actually
rung up at the cash register.
          Owen argues that because Argus did not deliver a properly functioning security
system with VSI technology, Argus committed fraud. However, the record contains no
evidence that Argus made a material misrepresentation. After hearing the evidence, the
trial court stated:
On the fraud . . . the Court did not hear, not a little bit, nothing really as far
as the fraud. And I was of course watching for that because that’s a cause
of action and it’s just not there.
 
          After viewing the evidence in the light most favorable to Owen and disregarding all
contrary evidence and inferences, we hold the trial court did not err in granting a directed
verdict for Argus on Owen’s fraud claim. Owen’s cross-appeal is overruled.
          We affirm the trial court’s order granting a directed verdict for Argus on Owen’s fraud
claim. We reverse the trial court’s judgment and render judgment that Owen take nothing
from Argus.


                                                                           FEDERICO G. HINOJOSA
                                                                           Justice


Memorandum Opinion delivered and filed this
the 31st day of March, 2005.